[Crim. No. 179.  Department Two.—November 24, 1896.]

THE PEOPLE, RESPONDENT, *v.* GEORGE TARBOX, APPELLANT.

CRIMINAL LAW—MOTION TO SET ASIDE INFORMATION — RETURN OF PRELIMINARY EXAMINATION—ORDER OF COMMITMENT—INDORSEMENT UPON DEPOSITIONS—MINISTERIAL IRREGULARITIES.—Although good practice requires that the return of the preliminary examination by the committing magistrate should be filed before the information is filed, yet the defendant is legally committed when the magistrate has acted judicially and signed the order of commitment, and entered it upon his docket, and no further action is necessary to enable the district attorney to file an information for the offense named in the order; and the neglect of the justice to return the record of the preliminary examination before the information is filed, or his failure to indorse the order of commitment upon the complaint or depositions, is a mere ministerial irregularity, not affecting the substantial rights of the defendant.

ID.—PUBLIC EXAMINATION BEFORE MAGISTRATE—EXCLUSION UPON REQUEST OF DEFENDANT—WAIVER OF RIGHT.—The defendant has a right to a public examination before the committing magistrate, but under the provisions of section 868 of the Penal Code, he may waive such right by requesting the exclusion of all persons except those specified in that section.

ID.— RAPE—EVIDENCE — ADMISSIONS OF DEFENDANT — CORPUS DELICTI—
PREGNANCY UNDER AGE OF CONSENT.—Upon the trial of a defendant
charged with the crime of rape committed upon a girl under the age of
consent, evidence that she was pregnant before the age of consent,
though not in any manner connecting the defendant with the pregnancy,
is sufficient proof of the *corpus delicti*, to authorize the reception of evi-
dence as to the admissions of the defendant made after his arrest and
before his examination.

ID.—INSUFFICIENCY OF EVIDENCE — OPPORTUNITY TO COMMIT OFFENSE. —
Evidence merely showing a possible opportunity for the commission of
the offense, but not excluding reasonable opportunity for its commission
by another, is insufficient to sustain a conviction.

ID.— PART OF STATEMENT NOT DISTINCTLY UNDERSTOOD—QUALIFICATION.
Where a witness to a part of the statement of the defendant is unable
to state precisely what he meant, and testifies that the word or part he
fails to remember was used to qualify something, or was essential to an
understanding of the meaning of the part given, such testimony is not
sufficient to justify a verdict of guilty.

ID.—CAUTION AS TO VERBAL ADMISSIONS.—All verbal admissions should
be received with great caution, and the whole of what the prisoner said
on the subject at the time of making the admission or confession should
be taken together.

APPEAL from a judgment of the Superior Court of
Ventura County and from an order denying a new trial.
B. T. WILLIAMS, Judge.

The facts are stated in the opinion.

*Blackstock & Ewing,* for Appellant.

The information should have been set aside because
it was filed before the depositions or other records
from the magistrate's court were filed in the superior.
(Const., art. 1, sec. 8; Pen. Code, secs. 809, 883.)  The
accused was not accorded his right to a public trial, at
the purported examination.  (Const., art. 1, secs. 7, 13;
*People* v. *Swafford,* 65 Cal. 223; *People* v. *Hartman,* 103
Cal. 245; 42 Am. St. Rep. 108.)  His constitutional
right to a public trial could not be waived by defendant.
(*Kalloch* v. *Superior Court,* 56 Cal. 229; *People* v. *O'Neil,*
48 Cal. 257; *Cancemi* v. *People,* 18 N. Y. 128; *People* v.
*Deegan,* 88 Cal. 608.)  The court erred in receiving the
testimony of Frank Hobart regarding statements made
by the defendant, because such statements were in the

nature of a confession and received when no offense was shown to have been committed. (*People* v. *Simonsen,* 107 Cal. 346.) There is no testimony to show that Sena Crane was not the wife of the accused when she became pregnant. (*Windhaus* v. *Bootz,* 92 Cal. 617.) The testimony fails to show that the alleged offense was committed in Ventura county. (*People* v. *Aleck,* 61 Cal. 138.)

*W. F. Fitzgerald, Attorney General.* and *C. N. Post, Deputy Attorney General,* for Respondent.

An information may be filed before the committing magistrate returns the depositions and order of commitment to the clerk of the court. (*People* v. *Wickham,* 113 Cal. 283; *People* v. *Ah Sing,* 95 Cal. 657; *People* v. *Riley,* 65 Cal. 107.) The magistrate's entry in his docket was sufficient on which to base an information. (*People* v. *Wallace,* 94 Cal. 499.) The order excluding the general public from the examination was made by the magistrate, at the request of defendant's counsel, in conformity with section 868 of the Penal Code. The word "trial," as used in section 13, of article I, of the constitution, was not intended to apply to preliminary examinations. (Black's Law Dictionary, 448, tit. "Examination"; *Anderson* v. *Pennie,* 32 Cal. 267.) There was no error in admitting the testimony of Frank Hobart regarding statements made by defendant. (*People* v. *Jones,* 31 Cal. 568; Wharton on Criminal Evidence, 9th ed., sec. 325; 3 Rice on Evidence, secs. 293, 297; *People* v. *Jaehne,* 103 N. Y. 182.)

HAYNES, C.—The defendant was prosecuted upon an information for the crime of rape, alleged to have been committed at the county of Ventura, on September 28, 1895, upon the person of Sena Crane, a female under the age of fourteen years, was found guilty by the jury, and was sentenced to imprisonment in the state's prison for the term of seven years. From that judgment, and

from an order denying his motion for a new trial, he appeals.

The information upon which he was tried was filed in the superior court on March 9, 1896, and the depositions, transcript, and order of commitment were not returned to the superior court by the examining magistrate until March 10, 1896.

Upon his arraignment, the defendant moved to set aside the information, upon the ground that it was filed before any commitment, deposition, or other record showing that he had had a preliminary examination, had been returned or filed in said court, and upon the further ground that no order of commitment was indorsed upon the depositions afterward returned. Said motion was denied, and the defendant excepted.

Good practice requires that the return of the examining magistrate should be made and filed before the information is filed, but we are not prepared to say that the filing of the information, after the examination was had, and the order holding the defendant to answer was in fact made, was more than an irregularity which would not justify a reversal of the judgment where it does not appear that it affected any substantial right of the defendant. Section 1258 of the Penal Code provides: "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

Section 995 of the Penal Code specifies two grounds upon which an information must be set aside upon the defendant's motion: "1. That before the filing thereof the defendant had not been legally committed by a magistrate; 2. That it was not subscribed by the district attorney of the county."

The question arising under the first subdivision above stated is, When is the defendant legally committed? We think that occurs when the magistrate has acted judicially, and has made and signed the order of commitment. His judicial functions then cease, and the return

of the depositions and order of commitment is a mere
ministerial duty.

In *People* v. *Wallace*, 94 Cal. 499, it was said: " It is
doubtless true that the order holding to answer must
be in writing; but when, as a result of an examination,
such an order has in fact been made and entered
upon the docket of the justice, it would seem that no
further action on his part is necessary to authorize the
district attorney to file an information against the de-
fendant for the offense named in the order."

In that case—as in the case at bar—the order holding
the defendant to answer before the superior court was
entered upon the justice's docket, but was not indorsed
upon the complaint or depositions.

It was also specified as an additional ground of said
motion that the defendant was not accorded his right
to a public examination before the magistrate, because
the examination was held with closed doors, all persons
being excluded except the defendant, his attorneys, the
prosecuting attorney, the reporter, and the witness un-
der examination.   The order of exclusion was made at
defendant's request.

Section 868 of the Penal Code provides: " The magis-
trate must, also, upon the request of the defendant, ex-
clude from the examination every person except his
clerk, the prosecutor, and his counsel, the attorney gen-
eral, the district attorney of the county, the defendant
and his counsel, and the officer having the defendant in
custody."

It is argued, however, that the defendant had no
power to waive the provisions of section 13, of article
I, of the constitution, which provides: " In criminal
prosecutions, in any court whatever, the party accused
shall have the right to a speedy and public trial."

In *People* v. *Swafford*, 65 Cal. 223, an order of exclu-
sion was sustained; the record being silent, it was as-
sumed that the defendant assented to or demanded the
order.   That cause was reviewed and materially quali-
fied in *People* v. *Hartman*, 103 Cal. 245, 42 Am. St. Rep.

108; and upon that case appellant relies to sustain his contention. But *People* v. *Hartman, supra,* is not in point. Not only was the order of exclusion in that case made against the objection of the defendant, but, as was there held, there is no provision of the code relating to or authorizing such exclusion during the trial in the superior court. There can be no question that a defendant has the " right " to a public examination before the committing magistrate, but under the provisions of the Penal Code above quoted he may waive that right whenever he deems it to his interest to do so.

Appellant further contends that the court erred in receiving the testimony of Frank Hobart, the committing magistrate, touching statements alleged to have been made by the defendant after his arrest and before his examination. The objection to this testimony was that the *corpus delicti* had not been shown at the time it was received, or at all.

The testimony of the medical witness was that on March 6, 1896, he made an examination of Sena Crane, that he believed her to be then pregnant, and that she was then advanced in pregnancy about four and one-half months; and it was shown by the testimony of her father and mother that she became fourteen years of age on February 3, 1896. As the pregnancy had its inception before she had attained the age of consent, the fact that the crime of rape had been committed by some one was shown, and defendant's objection was therefore not well taken. Proof of the *corpus delicti* need not in any manner connect the defendant with its commission.

It is specified, among the grounds of defendant's motion for a new trial, that the verdict is contrary to the evidence in several particulars: 1. That it was not shown that the offense was committed within the county of Ventura; 2. That it was not shown that Sena was not the wife of the defendant at the time of the commission of the alleged offense; 3. That it was not shown that the defendant committed the alleged offense.

The evidence upon the first and second points was far from being satisfactory; but, if no other ground existed for granting a new trial, it should have been granted upon the ground last stated.

The only evidence that a rape had been committed upon the person of Sena Crane was the, fact of her pregnancy; and the only evidence, aside from the alleged admission of defendant testified to by the examining magistrate, tending to connect the defendant with its commission was the fact that for about a year he had been in partnership with Sena's father in the butchering business; that during that time he lived with Crane's family, which consisted of Mr. and Mrs. Crane and their six children and Mrs. Crane's father; that Sena sometimes rode with the defendant on the wagon used in his business, and sometimes attended social gatherings with the defendant, but no act of impropriety was at any time discovered in defendant's conduct. Thus far the evidence only showed a possible opportunity for the commission of the offense by the defendant, but did not exclude similar opportunities by others.

If the evidence had stopped there it is clear that there could have been no conviction, for the opportunity to commit an offense can have no weight, apart from other circumstances, unless it excludes all reasonable opportunity for its commission by another, and, standing alone, is insufficient to sustain a conviction.

In this state of the evidence the prosecution called Frank Hobart, the justice of the peace before whom the defendant was brought upon being arrested, and asked him whether the defendant made any statements to him, and the witness replied as follows: "He wanted to know if I could give him an order to see the girl. I told him no. He said if the girl went back on him he would have to take his medicine; there was no use denying it. And just what one he used to qualify, just what he meant, is more than I can remember—whether it was to deny the case, deny the charge, deny the act, or what the word was." The district attorney: "State what was

said, not what you remember. A. It is no use denying
it." Upon cross-examination he was asked: "You say,
'no use to deny it'; you say you don't know what he
meant then? A. I don't know; I know the impression
made upon my mind."

The constable, Frank Tryce, was present during said
conversation, and was examined by the prosecution, and
testified in substance that he heard the defendant ask
for an order to see the girl; that defendant said some-
thing else, but he could not state it; that the other part
he could not remember "only by Judge Hobart bring-
ing it to my mind, speaking about it."

Upon cross-examination he testified in substance that
Hobart wanted to know if the witness understood it as
he did; that they did not understand it alike; that noth-
ing was said by the defendant with reference to his guilt
or innocence; that defendant did not intimate that he
was guilty; that Hobart asked witness how he under-
stood the conversation with defendant, and the witness
replied, "I told him as I understood it. Q. What was
the occasion when he said whatever he did say? A.
Yes, he said something; he said he didn't believe that
the girl had sworn to that complaint until he had seen
it. Q. That was the reason he wanted to see it? A.
Yes, sir." The girl, Sena, refused to be sworn, and no
other evidence was given tending to show defendant's
guilt. The defendant offered no evidence.

The testimony in chief of the witness Hobart, as well
as the testimony of Tryce, shows that he, Hobart, failed
to remember some material part of the defendant's state-
ment. He could not tell "whether it was to deny the
case, deny the charge, deny the act, *or what the word
was.*" It is well settled that the witness may testify to
a part of an entire conversation, if he heard only a part,
and such part appears to be complete and intelligible;
but, if the witness is unable to state what he heard, and
especially where the witness states that the word or the
part he fails to remember was used to qualify some-
thing, or was essential to an understanding of the mean-

ing of the part given, such testimony is not sufficient
to justify a verdict of guilty.   The witness said: "And
just what one he used to qualify, just what he meant, is
more than I can remember."   He could only arrive at
the meaning of the defendant from the words he used,
and, if from a consciousness that some word or expres-
sion which formed part of the statement had escaped
his recollection he felt bound to declare that "just what
he meant is more than I can remember," it was obvi-
ously impossible for the jury to supply his want of recol-
lection, and ascertain what the defendant in fact said
or meant.

"With respect to all *verbal admissions* it may be ob-
served that they ought to be *received with great caution.*"
(1 Greenleaf on Evidence, sec. 200.)   "In the proof of
confessions, as in the case of admissions in civil cases,
the whole of what the prisoner said on the subject at the
time of making the confession should be taken together.
This rule is the dictate of reason as well as humanity."
(1 Greenleaf on Evidence, sec. 218.)

In *People* v. *Gelabert,* 39 Cal. 663, the alleged confes-
sion was made partly in Spanish and partly in broken
English, and the witness stated that he did not under-
stand all that the prisoner said in Spanish.   He was
permitted to testify to the alleged confession against
defendant's objection.   Upon appeal the judgment was
reversed, the court, by Wallace, J., saying: "Here it is
certain that, to some extent, the witness failed to com-
prehend all that the prisoner said.   How important the
portion not understood may have been we cannot know.
It might have, if correctly and fully detailed, relieved
the prisoner from the serious contradiction which, as
here given, it fixed upon him."

In *People* v. *Keith,* 50 Cal. 139, it was said: "The wit-
ness, Rosenberg, testified to only a portion of the con-
versation in which the defendant admitted the homicide,
and, standing alone, the evidence of a part of the con-
versation would have been inadmissible."

No objection was made to the introduction of the evi-

dence here under consideration, nor was any motion made to strike it out, and whether such objection or motion should have been sustained, if it had been made, need not be considered or decided, inasmuch as upon another trial such other or additional evidence may be produced as to make its consideration unnecessary. What we now decide is that the evidence, consisting of the alleged admissions of the defendant, is not sufficient to overcome the presumption of the defendant's innocence, and therefore insufficient to justify the verdict of the jury.

The judgment and order appealed from should be reversed and a new trial granted.

Searls, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.          Henshaw, J., Temple, J.

McFarland, J., concurring.—I concur in the judgment of reversal, although I am not as entirely clear that it is correct as I would like to be. I am the more inclined to concur because it seems likely that the jury erroneously based their verdict more upon the circumstance that neither the prosecuting witness nor the appellant testified, than upon the sufficiency of the evidence actually introduced. The girl may have refused to testify because she could not truthfully incriminate the appellant; and, as to a defendant in a criminal action, under the code, "His neglect or refusal to be a witness cannot in any manner prejudice him nor be used against him on the trial or proceeding."