[Crim. No. 21327. July 3, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON POMPA-ORTIZ, Defendant and Appellant.

520

COUNSEL

Enrique M. Ramirez and Ramirez & Valenzuela for Defendant and Appellant.

Wilbur F. Littlefield, Public Defender (Los Angeles), Dennis A. Fischer, Deputy Public Defender, David J. Byers, Sullivan, Jones & Archer, Margaret C. Crosby, Alan L. Schlosser, Amitai Schwartz and Fred Okrand as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MANUEL, J.**—Defendant Ramon Pompa-Ortiz appeals from a judgment of conviction entered on a jury verdict finding him guilty of rape by force or violence (Pen. Code, § 261, subd. 2). We must decide whether defendant has a constitutional or statutory right to a public preliminary examination and, if so, whether denial of the right compels reversal of the ensuing conviction. We conclude that defendant has a statutory right to a public preliminary examination and that denial of the right renders the commitment unlawful within the meaning of Penal Code section 995. We conclude, however, that such illegality can be successfully urged as a ground of reversal on appeal only if it in some way prejudiced defendant at his subsequent trial. (Cal. Const., art. VI, § 13.)

Defendant was charged by complaint with rape and with two misdemeanor counts of driving while intoxicated and with a suspended license. Prior to the preliminary hearing, the People requested that the hearing be closed. The prosecutor stated no reason for the request. Over defendant's objection, the court ordered that the preliminary hearing be closed, noting that the closure was in the interests of both defendant and the victim.[1]

The victim of the rape, defendant's cousin, was the only prosecution witness on that count. A police officer testified as to the misdemeanor counts. The only defense witness simply contradicted the victim's testimony that she had never gone dancing with defendant. Although the magistrate held defendant to answer on all counts, the prosecutor filed an information charging only the rape. Defendant moved to set aside the information under Penal Code section 995[2] on the ground that he

---

[1]The magistrate commented: "Well, the Code provides for a private hearing for the benefit of the defendant, so that the public will not be apprised of what is going on in the event that the defendant is found—is not held to answer—and the reason for the request on the part of the People is that we have a rape victim who is going to testify, and that these matters are sensitive, and it may be that from the defendant's standpoint, he may not be held to answer, and if that is the case, then he certainly would want these proceedings not to have been public. [¶] By the same token, it is in the interest of the victim to be able to testify without having the public listen to the testimony. I feel that it actually is in the interests of both parties to exclude all persons from the examination with the exception of the clerk, the bailiff, the District Attorney, investigating officer, the defense attorney, the defendant, the interpreter for the defendant, and the court reporter and myself from these proceedings."

[2]Unless otherwise indicated, all section references hereafter are to the Penal Code.

had not been legally committed; the motion was denied. Defendant did not seek pretrial review by extraordinary writ. After jury trial, defendant was convicted as charged. On appeal he challenges only the ruling of the trial court in denying the section 995 motion. He contends that he was entitled to an open preliminary hearing on both federal and state constitutional grounds and pursuant to statute. Defendant cites no authority, and we find none to support the contention that an open preliminary hearing is compelled by the "public trial" language of the Sixth Amendment of the federal Constitution.[3] We turn, therefore, to an examination of defendant's rights under California law.

We must first emphasize that the instant case does not involve the right of the public and press to attendance at either a preliminary examination or trial. Nor are we presented with the question of a defendant's right to a public *trial*. Defendant's trial was open to the public; he makes no claim of error in the conduct of the trial itself.

I

■ It is settled that denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion. (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304] [§§ 865, 866—right to cross-examine and present affirmative defense]; *People* v. *Elliot* (1960) 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225] [§ 868—right to closed examination]; *People* v. *Napthaly* (1895) 105 Cal. 641, 644-645 [39 P. 29] [§§ 858, 859—denial of counsel]; *People* v. *Phillips* (1964) 229 Cal.App.2d 496, 501-502 [40 Cal.Rptr. 403] [denial of continuance to secure counsel]; *People* v. *Hellum* (1962) 205 Cal.App.2d 150, 153-154 [22 Cal.Rptr. 724] [absence of counsel]; *People* v. *Bucher* (1959) 175 Cal.App.2d 343 [346 P.2d 202] [§ 861—examination in one session]; *McCarthy* v. *Superior Court* (1958) 162 Cal.App.2d 755, 758-759 [328 P.2d 819] [§ 866.5—failure to advise of right to counsel]; *People* v. *Williams* (1954) 124 Cal.App.2d 32, 38 [268 P.2d 156] [§ 866.5—examination of defendant without counsel]; *People* v. *Salas* (1926) 80 Cal.App. 318 [250 P. 526] [§ 858—denial of counsel].) ■ Accordingly, we must determine whether a defendant

---

[3]The case at bar, involving a preliminary examination to determine if there is cause to hold an accused for trial, must be distinguished from the cases involving other pretrial proceedings which, from necessity or convenience, are held before trial but which are nevertheless part of the trial itself. (See *United States* v. *Clark* (2d Cir. 1973) 475 F.2d 240, 246-247 [motion to suppress evidence]; *United States* ex rel. *Bennett* v. *Rundle* (3d Cir. 1969) 419 F.2d 599, 608 [motion to suppress confession as involuntary].)

has a right to an open preliminary hearing and, if so, whether that right is substantial within the meaning of the foregoing rule.

No statute specifically provides that the defendant is entitled to a public preliminary examination.[4] Several statutes appear to contemplate, however, that such examinations will be public. Section 867 gives the magistrate discretion to exclude other witnesses while one is under examination,[5] and section 868 requires the magistrate to exclude all but essential personnel upon request of defendant.[6]

Although it has since been amended in respects not relevant here, section 868 was originally enacted as part of the Penal Code in 1872. It was based on section 161 of the Criminal Practice Act of 1851. The Code Commissioners stated that "The object of this section [868] is to carry out more fully the spirit of Sec. 867. The policy of the statute has always been to prevent the concocting of a charge against the defendant upon collusive or false testimony. The magistrate, with this view, may exclude witnesses while another witness is under examination. The ob-

---

[4]Section 124 of the Code of Civil Procedure provides that "Except...[as otherwise provided by law] the sittings of every court shall be public." It is doubtful that this section affords the defendant any right to a public hearing in *criminal* cases. (See *People v. Hartman* (1894) 103 Cal. 242 [37 P. 153]; *Kirstowsky v. Superior Court* (1956) 143 Cal.App.2d 745, 750 [300 P.2d 163]; *Cembrook v. Sterling Drug, Inc.* (1964) 231 Cal.App.2d 52, 57-59 [41 Cal.Rptr. 492].)

We find no express statutory authority for a public preliminary examination in the *provisions of Penal Code section 686* which guarantees the right of criminal defendants to counsel, to speedy and public *trial*, and to confrontation. Further, section 690 which purports to extend section 686 to "all criminal actions and proceedings in all courts," contains the proviso, "except where...special provision is made for particular courts or proceedings." The proceedings to determine whether an accused shall be brought to trial are specially provided for—by examination (§ 858 et seq.) or by grand jury (§ 888 et seq.)—and thus fall outside the ambit of section 690.

[5]Section 867 reads: "While a witness is under examination, the magistrate may exclude all potential and actual witnesses who have not been examined. He may also cause the witnesses to be kept separate, and to be prevented from conversing with each other until they are all examined."

[6]Section 868 reads: "The magistrate must also, upon the request of the defendant, exclude from the examination every person except his clerk, court reporter and bailiff, the prosecutor and his counsel, the Attorney General, the district attorney of the county, the investigating officer, the officer having custody of a prisoner witness while the prisoner is testifying, the defendant and his counsel, and the officer having the defendant in custody; provided, however, that a prosecuting witness may, in the discretion of the court, be entitled for moral support to the attendance of one person of his or her own choosing otherwise not a witness. The person so chosen shall not discuss prior to or during the preliminary hearing the testimony of the prosecuting witness with any person, other than the prosecuting witness, who is a witness in the examination. Nothing in this section shall affect the right to exclude witnesses as provided in Section 867 of the Penal Code."

ject of that provision might be wholly defeated if, though not present, one witness might be informed of the testimony of another by persons who are present. Another advantage may result from this section. If the examination is necessarily public, the testimony will be spread before the community, and a state of opinion may be created which will render it difficult to obtain an unprejudiced jury. To guard the rights of the defendant against a secret examination, the section provides that it shall not be conducted in private, unless at his request." Although the commissioners' primary concern was obviously the right of the defendant to exclude the public so as to prevent fabricated testimony and to guarantee an unbiased jury, the clear implication is that absent a defendant's request for exclusion, the drafters intended the examination to remain open.[7]

The requirement of an open preliminary hearing did not have its roots in constitutional antecedents, however, for at the time section 868 was enacted there was no state constitutional public trial guarantee and the doctrine of incorporation had not yet been developed to bring the federal constitutional right to state courts.

The California Constitution has since 1879 guaranteed criminal defendants "the right to a speedy and public trial" (art. I, § 15; § 13 prior to 1974).[8] The debates surrounding the adoption of the Constitution contain no hint as to whether the constitutional guarantee was intended to apply to anything other than the trial itself. The committee report with the original proposal merely noted: "Section thirteen has been provided for by inserting in place of the old section, already disposed of, that portion of the old section eight, in regard to the right of the accused in a criminal trial, and has been amended. The amendment consists in adding certain other usually enumerated rights, mostly taken from article six of the amendments to the Constitution of the United

---

[7]See Geis, *Preliminary Hearings and the Press* (1961) 8 UCLA L.Rev. 397. This treatise, on the rights of the mass media in the preliminary hearing, provides a brief historical analysis of the preliminary hearing in England and the United States. Provisions such as section 868, giving the defendant the power to insist upon a closed hearing, were apparently recognized as "unique" and, in most instances, until 1960 had been retained "in judicial dormancy and day-to-day disuse." (*Id.*, at p. 407.)

[8]Although the Constitution of 1849 contained no public trial provision, public trial has been *statutorily* provided in California at least since 1851. Section 11 of the Criminal Practice Act enumerated the rights of defendants as including "a speedy and public trial," and similar language was enacted in 1872 as Penal Code section 686, subdivision (1).

States, and which seem to have been omitted from that portion of the old section eight. We have also altered the clause in regard to putting a person twice in jeopardy, so as to remove any doubt, in case a jury on the trial should, for any reason, be discharged without rendering a verdict." (Debates and Proceedings, Cal. Const. Convention 1878-1879, p. 179.)

There is little case law directly in point. In the early case of *People* v. *Tarbox* (1896) 115 Cal. 57 [46 P. 896], defendant challenged the legality of his commitment pursuant to section 995 on the ground he had not been accorded his right to a public examination. The exclusion order had been made at the defendant's request. It was argued on appeal that he had no power to waive the state constitutional right to a speedy and public trial, then contained in section 13 of article I. In affirming the judgment, we stated, "There can be no question that a defendant has the 'right' to a public examination before the committing magistrate, but under the provisions of the Penal Code above quoted [§ 868] he may waive that right whenever he deems it to his interest to do so." (115 Cal. at p. 62.)

In *People* v. *Weber* (1924) 68 Cal.App. 680 [230 P. 180], the defendant urged on appeal that he had been denied his constitutional right to a public examination before the magistrate in that his examination was held in the offices of the warden at Folsom Prison. Since the record failed to show that the examination in the warden's office was closed to the public, the Court of Appeal affirmed the judgment without considering the correctness of the *Tarbox* language, which it recognized as dicta.

Our historical review persuades us that the Legislature at all times perceived there was a right to public preliminary examinations and drafted the statutes in light of that understanding. The only cases on point appear to accept that proposition as so obvious as not to require discussion. We conclude, therefore, that defendant had a right to a public preliminary hearing which he was denied. We also believe that that right was a substantial right the denial of which entitled him to have the information set aside pursuant to section 995.

■ The question remains whether the court's error in denying defendant's section 995 motion compels reversal of the judgment of conviction, which followed an error-free trial, without any showing whatsoever that defendant was prejudiced by the exclusion of the public from his preliminary hearing.

## II

Counsel and/or amici curiae[9] approach the question of prejudice from two perspectives. First, they urge that defendant need make no affirmative showing of prejudice for reversal of the conviction because he was denied his constitutional right to a public trial and it has been established that a violation of the constitutional right to a public trial "necessarily implies prejudice." They cite *People* v. *Byrnes* (1948) 84 Cal.App.2d 72, 78-80 [190 P.2d 290], quoting from *Tanksley* v. *United States* (9th Cir. 1944) 145 F.2d 58, 59 [156 A.L.R. 257]. We take no issue with the correctness of *Byrnes* or the line of cases which emphasize the importance of the public *trial* and the near impossibility of establishing prejudice from the denial thereof. Those cases are not controlling here, however, for the defendant in the instant case was given a public trial on the issue of his guilt or innocence.

As a second approach for reversal of the conviction without a showing of prejudice, defendant relies upon *People* v. *Elliot, supra,* 54 Cal.2d 498. *Elliot* advances the broad proposition that if the defendant has not been "legally committed" and the trial court nonetheless erroneously denies the motion to set aside the information and permits the action to proceed to judgment, the resulting conviction must be reversed. In *Elliot* the magistrate allowed a newspaper reporter to remain in the courtroom over defendant's objections and in violation of section 868. The trial court denied her motion to set aside the information. We reversed the conviction. Although we discussed the threat to a fair trial presented by the failure to close the preliminary examination,[10] we made no assessment of prejudice and applied a rule of per se reversal, holding that the superior court lacked jurisdiction to proceed because the commitment was illegal. We further held that the error was not and could not be cured by a subsequent fair trial in superior court.

---

[9]Amicus briefs have been filed on behalf of defendant by the Public Defender of Los Angeles County and by the American Civil Liberties Union. The latter brief is directed in large measure to the right of press and public to a public trial. As indicated above, these issues are not before us.

[10]"One of the main purposes of section 868 is to give the defendant the opportunity of protecting his right to an impartial and unbiased jury by preventing dissemination of this testimony, either by newspaper or other media prior to trial." (*Elliot, supra,* at p. 504.) In fact, jury trial was waived in *Elliot* but we felt that defendant should not have been placed in a position where she had to choose between waiver of a jury or risk trial before a biased jury.

The theory behind the per se reversible error rule was stated as follows: "...where the accused is not legally committed within the meaning of section 995 of the Penal Code, the commitment is voidable. Upon proper objection, the superior court has no jurisdiction to proceed. It is the same as if no preliminary examination at all had been held, and is analogous to the situation where no evidence to connect the accused with the crime is introduced at the preliminary examination. In such event, of course, the information must be quashed. (*Greenberg* v. *Superior Court*, 19 Cal.2d 319 [121 P.2d 713].)"

The rule of *Elliot* has come under considerable criticism in the Courts of Appeal and in some cases has either been reluctantly applied (*People* v. *Malich* (1971) 15 Cal.App.3d 253, 264-271 [93 Cal.Rptr. 87] [denial of counsel at post lineup identification which was sole evidence at preliminary]) or, as in *People* v. *Partlow* (1978) 84 Cal.App. 3d 540 [148 Cal.Rptr. 744], has been avoided by a determination that the error did not result in an illegal commitment.[11] (See: Iungerich, *Reversing Perfect Trials, California Style: Time for Re-evaluation of the Effect of Errors in Pretrial Commitment Proceedings* (1973) 48 L.A. Bar Bull. 88.)

The source of the difficulty in *Elliot* is the uncritical use of the term "jurisdiction" when assessing the effect of an illegal commitment on the trial in superior court. Until 1942 and *Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319 [121 P.2d 713], sanctioning the writ of prohibition in the appellate court as a vehicle for pretrial review of the superior court's refusal to set aside an information on probable cause grounds, the cases reversing convictions for erroneous denial of motions to set aside the information did not speak in jurisdictional terms. (See, e.g., *People* v. *Napthaly, supra*, 105 Cal. 641.) *Elliot* utilized the *Greenberg* language in fashioning the per se reversal rule, thereby introducing into

---

[11]Interestingly, in *Partlow* the error (failure to produce a material informant) deprived defendant of the right "to elicit testimony or introduce evidence tending to overcome the prosecution's case or establish an affirmative defense," which had been declared substantial in *Jennings* (66 Cal.2d at pp. 879-880). *Partlow* dismissed the *Elliot* rule with the simple observation that "not all errors affecting the legality of the commitment are prejudicial per se" (84 Cal.App.3d at p. 552) and found the error in failing to produce the informant at the preliminary was cured at trial by production of the informant.

the field of appellate review the concept of jurisdiction used in the prohibition context. In the latter context, however, jurisdiction has a much broader meaning than does jurisdiction in the fundamental sense of legal power to hear and determine a cause. The presence of a jurisdictional defect which would entitle a defendant to a writ of prohibition prior to trial does not necessarily deprive a trial court of the legal power to try the case if prohibition is not sought. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288-291 [109 P.2d 942, 132 A.L.R. 715].) By failing to distinguish the two concepts of jurisdiction, the *Elliot* rule compels reversal of judgment because of preliminary hearing error without assessment of prejudicial effect. If the *Elliot* type of error were indeed one of fundamental jurisdiction, a defendant would be permitted to raise it any time, including for the first time on appeal. Yet, it is settled that "failure to move to set aside the information bars the defense from questioning on appeal any irregularity in the preliminary examination." (*People* v. *Harris* (1967) 67 Cal.2d 866, 870 [64 Cal.Rptr. 313, 434 P.2d 609]; Pen. Code, § 996.)

We believe the time has come to reconsider and to discard the *Elliot* rule. ■ Henceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects. We follow this approach in other contexts. In *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], for example, we held that denial of defendant's right to trial within a prescribed statutory time period was not reversible error on appeal in the absence of a showing of prejudice. If the issue is raised before trial, however, prejudice is presumed and the information is dismissed. (See also *People* v. *Welch* (1972) 8 Cal.3d 106, 113 [104 Cal.Rptr. 217, 501 P.2d 225], and *People* v. *Salas* (1972) 7 Cal.3d 812, 818-819 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832] [denial of motions to change venue]; also, *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401], where error in refusing representation by attorney of choice, correctable on pretrial application (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750]), was held to compel reversal after judgment only upon a showing of prejudice).

Moreover, our resolution is consistent with the United States Supreme Court's treatment of constitutional error at the preliminary examination. Thus, even in a situation as extreme as the denial of counsel, the U.S. Supreme Court has held that the harmless error rule is applicable. (See *Coleman* v. *Alabama* (1970) 399 U.S. 1, 11 [26 L.Ed. 2d 387, 397, 90 S.Ct. 1999].) In *Coleman*, the court first held that the preliminary examination was a critical stage in the proceeedings requiring the appointment of counsel. The court then remanded to the state courts to determine whether defendant was prejudiced at trial by denial of counsel at the preliminary examination.

Defendant makes no showing that he was denied a fair trial or otherwise suffered prejudice from the closure of the preliminary examination. Moreover, there is no basis for assuming that the compromising of the values underlying open hearings in any way prejudiced defendant. Those are the avoidance of "abuse or arbitrary use of judicial power"; the promotion of public confidence in the administration of justice; the deterrence of an open hearing to the commission of perjury; and the possibility that publicity attendant on an open hearing will lead to the discovery of important witnesses. (*In re Oliver* (1948) 333 U.S. 257, 270, fn. 24 [92 L.Ed. 682, 692, 68 S.Ct. 499]; *Tanksley* v. *United States, supra*, 145 F.2d 58, 59-60; *People* v. *Jones* (1979) 47 N.Y.2d 409 [418 N.Y.S.2d 359, 391 N.E.2d 1335, 1340].)

There is no indication in this record that any of the above considerations affected defendant's trial. The actual trial was open to the public. No suggestion of abuse of judicial power appears, and any minimum diminution in public confidence would in no way harm defendant. The witnesses were subjected to cross-examination in public, and inasmuch as the incident giving rise to the charge presented only the issue whether the victim consented to defendant's sexual advances which, by all accounts, occurred at an isolated location, it is difficult to see how the error in closing the preliminary examination could have deprived defendant of any potential witnesses.

There being no showing of prejudice, the judgment is affirmed.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

**BIRD, C. J.**—I concur only in that part of the majority opinion which holds that under California law a defendant is entitled to a public preliminary examination. However, I would go further and find a constitutional basis for that right.