[No. G038851. Fourth Dist., Div. Three. July 14, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN PABLO BECERRA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*This opinion is certified for publication with the exception of the parts of the Discussion titled: *All Accomplice Testimony Was Sufficiently Corroborated* and *The Case Must Be Remanded to Address Conceded Sentencing Errors.*

## Counsel

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Rhonda Cartwright-Ladendorf, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**IKOLA, J.**—Defendant Juan Pablo Becerra challenges his convictions for two counts of murder, three counts of street terrorism, and one count of

possession of a firearm by a felon. He contends the indictment underlying the murder counts and two of the street terrorism counts was impermissibly based on perjury before the grand jury, and insufficient evidence corroborated the testimony of his accomplices. But defendant suffered no prejudice from the perjury—the trial jury heard about the witness's perjury and still found defendant guilty beyond a reasonable doubt. And all accomplice testimony was sufficiently corroborated. Thus, we affirm the judgment of conviction.

Defendant also asserts several sentencing errors; the Attorney General concedes all but one. We vacate the sentence and remand for resentencing.

## FACTS

Defendant, a 7th Street gang member also known as "Lefty," was armed with a gun as he sat in a car driven by fellow gang member Jesus Madrigal. Defendant asked Madrigal to drive around looking for a rival gang member. A car approached them, then turned around to follow them. Madrigal pulled into a parking lot to let the car pass. Defendant and another gang member in Madrigal's car opened fire on the passing car. One of the shots killed the driver, Pedro Martin, also known as "Tiger."

Some eight months later, defendant was armed with a nine-millimeter Taurus handgun as Madrigal drove him and fellow gang members, including Jaime Perea, in a green Chevy Suburban. At a red light on Bristol Street in Santa Ana, rival gang members pulled up next to the Suburban on the passenger's side. Defendant, sitting in the front passenger's seat, asked one of them, "Where are you from, fool?" Someone responded with the name of a rival gang, F-Troop. Defendant repeatedly fired his gun at the car. One of the shots killed the car's driver, Angel Giles.

About four months later, a police officer saw defendant driving by in a green truck. He followed the truck, which parked behind a house. He called for backup. When the other officers arrived, they found the keys to the house had been left in the front door. The police ultimately found defendant hiding in a tool shed behind another house.

The police searched the apartment defendant shared with Madrigal. They found the nine-millimeter Taurus handgun used to kill Giles. Defendant was a possible "main contributor" of DNA found on the trigger and grip. The chance that a random person could not be excluded as a main contributor of the DNA was 1 in 700,000 for the DNA on the trigger and one in 10 billion for the DNA on the grip.

Meanwhile, Jaime Perea was arrested for another crime. Perea testified before the grand jury investigating the Martin and Giles murders, stating he

heard defendant confess at a party to killing Martin and Giles. He lied, though, by claiming he was not present at the Giles murder or at the scene of another crime (the murder of Michael Ruiz) allegedly connected to defendant. In truth, he was at both crime scenes.

The People filed a consolidated information[1] that, as amended, charged defendant with one count each of first degree murder (Pen. Code, § 187, subd. (a))[2] (count 1) and street terrorism (§ 186.22, subd. (a)) (count 2) for the killing of Martin, as well as one count each of first degree murder (count 5) and street terrorism (count 6) for the killing of Giles. Defendant was further charged with one count each of possession of a firearm by a felon (§ 12021, subd. (a)(1)) (count 7) and street terrorism (count 8) relating to his carrying a gun on the day of his arrest. Also, defendant was charged with one count each of first degree murder and street terrorism related to the Ruiz murder (counts 3 and 4). The information alleged special circumstances of murder committed for criminal street gang purposes (§ 190.2, subd. (a)(22)), murder by drive-by shooting (§ 190.2, subd. (a)(21)), and multiple murder (§ 190.2, subd. (a)(3)). Regarding the murder counts, it alleged enhancements for vicarious discharge of a firearm by a gang member causing death. (§ 12022.53, subds. (d), (e)(1).) It further alleged criminal street gang enhancements regarding the murder and possession of a firearm by a felon counts. (§ 186.22, subd. (b)(1)(A).) The information also alleged defendant had suffered two serious and violent felony convictions (§§ 667, subds. (d), (e)(2)(A), 1170.12, subds. (b), (c)(2)(A)), a prior serious felony conviction (§ 667, subd. (a)(1)), and a felony conviction for which defendant served a separate prison term of one year or more and after which he committed a charged offense within five years (§ 667.5, subd. (b)).

At trial, Madrigal testified defendant shot at Martin's and Giles's cars. Perea testified he heard defendant confess to killing Martin, and saw defendant shoot at Giles's car. Perea also testified defendant ordered him in a letter to keep "that nose of yours clean. Don't be nose dipping." Perea understood the letter to be a threat that he would be killed if he testified against defendant. On both direct and cross-examination, Perea admitted lying to the grand jury when he falsely denied being present at the Giles and Ruiz murders.

A gang expert opined that defendant was a member of the 7th Street gang, a criminal street gang whose primary activities include assault with firearms.

---

[1] The consolidated information combined the charges contained in the previous grand jury indictment related to the Martin and Giles murders and the charges contained in the previous information related to the Ruiz murder and the possession of a firearm by a felon.

[2] All further statutory references are to the Penal Code.

He further explained defendant promoted the gang's criminal conduct by carrying a firearm, entering the territory of a rival gang, and killing rival gang members.

The jury found defendant guilty on the counts relating to the Martin murder (counts 1 and 2), the Giles murder (counts 5 and 6), and carrying a gun on the day of his arrest (counts 7 and 8). It found all of the applicable special circumstance allegations and sentence enhancements true.[3] The jury could not reach a verdict on the counts relating to the Ruiz murder (counts 3 and 4); the court declared a mistrial as to those counts, and the prosecution dismissed them.

The court sentenced defendant to two consecutive life sentences without the possibility of parole plus 50 years in state prison. The sentence comprised the following terms: count 1 (first degree murder of Martin), life without the possibility of parole plus a consecutive 25-year-to life term for the firearm discharge enhancement; count 2 (street terrorism regarding the Martin killing), a three-year upper term to run concurrently with the sentence imposed on count 1; count 5 (first degree murder of Giles), a consecutive term of life without the possibility of parole plus a consecutive 25-year-to-life term for the firearm discharge enhancement; count 6 (street terrorism regarding the Giles killing), a three-year upper term to run concurrently with the sentence imposed on count 5; count 7 (possession of a firearm by a felon), a two-year midterm plus five years for the criminal street gang enhancement, to run concurrently with the sentence imposed on count 5; and count 8 (street terrorism), a three-year upper term to run concurrently with the sentence imposed on count 1. The court stayed sentencing on the criminal street gang enhancements related to the murder counts.

## DISCUSSION

### The Perjury Before the Grand Jury Was Not Prejudicial

Defendant contends the prosecution could not proceed on an indictment obtained, at least in part, on false testimony to the grand jury. He notes Perea lied to the grand jury about not being present at the scene of the Ruiz and Giles murders. Defendant concedes the prosecution did not know Perea was lying at the time he testified to the grand jury. The record is not clear as to when the prosecution discovered the perjury and disclosed it to the defense, though it apparently did so at some point. Nonetheless, defendant suggests the indictment was tainted beyond redemption and claims the prosecution

---

[3] The prior conviction allegations were bifurcated for a later court trial. The prosecution dismissed those allegations at sentencing in anticipation of the expected sentence.

should have returned to the grand jury to reveal the perjury and seek a new, unblemished indictment. He relies on both federal and California law.

██ Under federal law, "the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." (*United States v. Calandra* (1974) 414 U.S. 338, 344–345 [38 L.Ed.2d 561, 94 S.Ct. 613].) "Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].' " (*United States v. Williams* (1992) 504 U.S. 36, 54–55 [118 L.Ed.2d 352, 112 S.Ct. 1735].)[4] Moreover, a "suspect under investigation by the grand jury" has never "been thought to have a right . . . to have exculpatory evidence presented." (*United States v. Williams*, at p. 52.)

California law differs somewhat by obligating the prosecution to "inform the grand jury of [the] nature and existence" of any known exculpatory evidence. (§ 939.71, subd. (a) [codifying holding of *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 254–255 [124 Cal.Rptr. 32, 539 P.2d 792]].) Even so, an indictment will be dismissed only if the prosecution's failure to disclose exculpatory evidence "results in substantial prejudice." (§ 939.71, subd. (a).)

██ When a defendant challenges an indictment on this ground *before trial*, the court must determine whether a reasonable probability exists that "a properly informed jury would have declined to find probable cause to indict had it known of the omitted evidence." (*Berardi v. Superior Court* (2007) 149 Cal.App.4th 476, 495 [57 Cal.Rptr.3d 170] (*Berardi*); see also *id.* at p. 493 [assessing prejudice under standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]].) The court must "evaluate the record as a whole, taking into consideration all relevant factors," including "the strength and nature of both the undisclosed exculpatory evidence and the probable cause evidence that was presented." (*Berardi*, at p. 495.)

But "[i]f a defendant waits until *after trial* to challenge the denial of a pretrial dismissal motion on appeal, different considerations are operative." (*Berardi, supra*, 149 Cal.App.4th at p. 495, fn. 10, italics added.) *Berardi* points us to *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519 [165 Cal.Rptr. 851, 612 P.2d 941] (*Pompa-Ortiz*), and *People v. Laney* (1981) 115 Cal.App.3d 508 [171 Cal.Rptr. 493] (*Laney*), cases neither party cite. *Pompa-Ortiz* held errors in a preliminary hearing "can be successfully urged as a ground of reversal on appeal only if it in some way prejudiced defendant at his subsequent trial."

---

[4] Federal courts have a limited supervisory power to dismiss an indictment for grand jury irregularities. (*Bank of Nova Scotia v. United States* (1988) 487 U.S. 250, 254 [101 L.Ed.2d 228, 108 S.Ct. 2369].) This power is subject to harmless error review. (*Id.* at pp. 254–256.)

(*Pompa-Ortiz, supra*, 27 Cal.3d at p. 522.) In that case the defendant was deprived of a public preliminary hearing, but the court found "no indication in this record" that the error "affected defendant's trial. The actual trial was open to the public." (*Id.* at p. 530.)

In *Laney*, the court "conclude[d] and [held] that the rule announced in *People v. Pompa-Ortiz* . . . applies also to grand jury proceedings." (*Laney, supra*, 115 Cal.App.3d at p. 513.) The prosecution had arguably violated its duty to disclose exculpatory evidence to the grand jury by withholding statements that impeached a witness's credibility. (*Id.* at p. 512.) The court held "the irregularities, if any there be, require reversal only if an accused can show he was deprived of a fair trial or otherwise suffered prejudice." (*Id.* at p. 513.) In determining whether the defendant had a fair trial, the court noted "[t]he allegedly exculpatory evidence set out above was not pursued or brought out at trial." Thus, because "[t]he trial was fair," the prosecution's failure to disclose the impeaching statements to the grand jury was harmless. (*Ibid.*)

Laney is directly on point. Defendant must show prejudice *at trial* to prevail on a posttrial claim that the indictment was wrongly procured through perjury. (*Laney, supra*, 115 Cal.App.3d at p. 513.) Here, defendant has failed to show any such prejudice. The prosecution elicited at trial an admission from Perea that he had lied to the grand jury about not being present at the murder scenes. The defense cross-examined Perea vigorously on his perjury. The trial jury, after being informed of Perea's perjury, nevertheless found beyond a reasonable doubt that defendant committed the Martin and Giles murders as well as the other crimes. Defendant thus suffered no prejudice at trial from Perea's grand jury perjury, rendering any error in the grand jury proceeding harmless. (Cf. *United States v. Mechanik* (1986) 475 U.S. 66, 70 [89 L.Ed.2d 50, 106 S.Ct. 938] (*Mechanik*) ["the petit jury's subsequent guilty verdict means . . . there was probable cause to believe that the defendants were guilty as charged, . . . any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt"]; see also *U.S. v. Lombardozzi* (2d. Cir. 2007) 491 F.3d 61, 80 [no prejudice where "all of the discrepancies between [the witness's] grand jury testimony and the evidence at trial were submitted to the petit jury which found [the defendant] guilty beyond a reasonable doubt"]; *U.S. v. Mangual-Corchado* (1st Cir. 1998) 139 F.3d 34, 42 (*Mangual-Corchado*) ["As the trial jury found guilt beyond a reasonable doubt, we are not persuaded that a similarly informed grand jury [of the alleged perjury] would not have found probable cause."].)

We decline defendant's suggestion that we apply the Ninth Circuit's decision in *United States v. Basurto* (9th Cir. 1974) 497 F.2d 781. That case

held due process requires the dismissal of an indictment secured in part by material grand jury perjury. (*Id.* at p. 785.) It also suggested the prosecutor has "a duty to notify the court and the grand jury" when she discovers the perjury. (*Ibid.*) But "*Basurto* has been accorded mixed reviews, even by the court which decided it." (*Mangual-Corchado, supra,* 139 F.3d at p. 41.) "More recent decisions from this circuit have suggested that prosecutorial misconduct must be 'flagrant' to violate due process." (*United States v. Bettencourt* (9th Cir. 1980) 614 F.2d 214, 216.) Ninth Circuit case law now provides, "The grand jury need not be advised of all matters bearing on the credibility of potential witnesses. Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has *knowingly* been presented . . . ." (*United States v. Thompson* (9th Cir. 1978) 576 F.2d 784, 786, italics added.) Defendant has not shown the prosecution knowingly presented perjury to the grand jury. He thus fails to show any due process violation under prevailing Ninth Circuit law. (*Ibid.*; cf. *U.S. v. Strouse* (5th Cir. 2002) 286 F.3d 767, 772 [indictment may not be dismissed due to "perjury before the grand jury that was not knowingly sponsored by the government"].)

Moreover, defendant's conviction shows the perjury was immaterial and would not warrant reversal under the prevailing federal standard. (*Smith v. Phillips* (1982) 455 U.S. 209, 220, fn. 10 [71 L.Ed.2d 78, 102 S.Ct. 940] [even "in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, we have required a new trial only when the tainted evidence was material to the case"]; *Mechanik, supra,* 475 U.S. at p. 70 [a "guilty verdict means . . . there was probable cause to believe that the defendants were guilty as charged"]; *Mangual-Corchado, supra,* 139 F.3d at p. 42 ["As the trial jury found guilt beyond a reasonable doubt, we are not persuaded that a similarly informed grand jury would not have found probable cause."].)

*All Accomplice Testimony Was Sufficiently Corroborated**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*The Case Must Be Remanded to Address Conceded Sentencing Errors**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1064.

## DISPOSITION

The judgment of conviction is affirmed, but we reverse as to the sentence and remand for resentencing.

O'Leary, Acting P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 2008, S166366.